```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

Song K. Pak,                       :
                                   :
            Plaintiff,             :   CIVIL ACTION
                                   :
      vs.                          :   No. 09-cv-03392
                                   :
Verizon,                           :
                                   :
            Defendant.              :

## MEMORANDUM AND ORDER

**Joyner, J.**                                      **July 8, 2010**

Before the Court is Defendant's Motion for Summary Judgment (Doc. No. 17), and responses thereto (Doc. Nos. 23, 29).  For the reasons set forth in the attached Memorandum, Defendant's Motion is granted.

## Background[1]

Plaintiff, Song K. Pak, is an Asian-American and former employee of Defendant, Verizon.  He brings this employment discrimination and discriminatory retaliation action under 42 U.S.C. § 1981.  Plaintiff was hired by Verizon on September 25, 2006, to work forty hours per week as a Video Network Engineer in Freehold, New Jersey.  Plaintiff's work team consisted of eight other employees, including another Asian-American male, an African male, and a Puerto Rican male.  The other Asian-American,

---

[1] In analyzing a motion for summary judgment, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. <u>Nicini v. Morra</u>, 212 F.3d 798, 806 (3d Cir. 2000).

1

Matthew Chia, was the highest earning member of the group.  As part of his employment, Plaintiff attended sixty training sessions, including a session about Verizon's Code of Business Conduct in January 2007.

In June 2007, Plaintiff's supervisor, Ferdinando DiMaggio, a white male, claims to have received reports from coworkers that Plaintiff had been leaving early and falsifying his time sheets.  DiMaggio told his supervisor, David Luft, who referred the issue to Verizon Security after consulting with the Human Resources Department.  According to Plaintiff, other team members left early on a regular basis.  DiMaggio also suspected Plaintiff was accessing confidential Verizon software and data on his company-issued laptop without authorization.

Falsifying time sheets and unauthorized use of software are violations of Verizon's Code of Business Conduct, thus Verizon Security investigated each issue.  Pending the outcome of the investigation, Plaintiff was suspended with pay on June 29, 2007.  On this day, Plaintiff says that he complained to Verizon Security Personnel, Maritza Baca and Christopher Heiser, about DiMaggio's discrimination, though he made no mention of discrimination in his official statement written during the investigation.

On August 22, 2007, Verizon Security issued its investigation report indicating that "on 29 weekend workdays between January 13 and June 10, 2007 . . . Mr. Pak submitted 29 inaccurate time sheets concealing that he was off his assigned post for an unauthorized 47 hours and 52 minutes." DiMaggio was out of the office on all of these days. Verizon Security also found that Plaintiff accessed unauthorized software. Plaintiff later admitted to both of these violations of Verizon's Code of Business Conduct, though he claims that he worked from home on the days that he left early.

On August 24, 2007, Luft terminated Plaintiff's employment, citing Verizon Security's findings as cause. Verizon claims that Luft was unaware of any discrimination complaint that Plaintiff might have made with Verizon Security personnel, and Plaintiff did not make a formal complaint of discrimination pursuant to Verizon's Code of Business Conduct. DiMaggio, the only person who allegedly discriminated, played no role in the investigation or the decision to fire Plaintiff. On July 28, 2009, almost two years after his firing, Plaintiff brought this action.

## Standard of Review

Summary judgment should be granted when "the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the moving party

3

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The summary judgment rule should be interpreted to accomplish its primary purpose of "isolat[ing] and dispos[ing] of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

If a party cannot "establish the existence of an element essential to the party's case," summary judgment is mandated. Id. at 322. The party moving for summary judgment meets his burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325. The nonmovant must then do more than raise "metaphysical doubts" about material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Petruzzi's IGA Supermarkets v. Darling-Del. Co., 998 F.2d 1224, 1230 (3d Cir. 1993). For this reason the nonmovant may not rely upon the "mere allegations or denials of his pleading." Fed. R. Civ. P. 56(e). Instead, he is required to offer "specific facts" from the record "showing there is a genuine issue for trial." Id.; see also Matsushita, 475 U.S. at 586.

## **Discussion**

The Court grants Defendant's Motion for Summary Judgment as Plaintiff does not offer sufficient evidence to make out a prima facie case of employment discrimination or prove that Defendant's

4

proffered reason for terminating Plaintiff's employment is pretextual. Plaintiff also fails to make out a claim of retaliatory discrimination.

**A. Employment Discrimination**

Under 42 U.S.C. § 1981(a), "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property . . . as is enjoyed by white persons." An employment discrimination claim brought under 42 U.S.C. § 1981 is governed by the burden-shifting framework first articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Langley v. Merck, 186 F. App'x 258, 259 (3d Cir. 2006).

Under McDonnell, the plaintiff bears the initial burden of establishing a prima facie case of discrimination, requiring a showing of the following: (1) plaintiff is a member of a protected class; (2) he was qualified for the position; (3) defendant took an adverse employment action against him; and (4) similarly situated employees were treated more favorably, or the circumstances give rise to an inference of discrimination. McDonnell, 411 U.S. at 802; Langley, 186 F. App'x at 259; Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003).

If a plaintiff makes out a prima facie case, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse employment action, which a plaintiff may overcome only by proving that the defendant's reason is a mere pretext. McDonnell, 411 U.S. at 802. The defendant's burden in providing a legitimate reason is "relatively light." Woodson v. Scott Paper Co., 109 F.3d 913, 920 n.2 (3d Cir. 1997). The plaintiff bears the "ultimate burden" of persuading the court of a defendant's intentional discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

**1. Prima Facie Case of Employment Discrimination**

Plaintiff fails to make out a prima facie case of employment discrimination. Briefly examining each of these factors, Plaintiff, as an Asian-American, is a member of a protected class. Also, it is undisputed that Plaintiff was qualified for his position as a network engineer. Furthermore, Plaintiff experienced an adverse employment action when his employment with Verizon was terminated. However, Plaintiff fails to establish a prima facie case because he does not demonstrate that similarly situated employees were treated more favorably; nor does this situation give rise to an inference of discrimination.

Plaintiff provides no evidence to substantiate the claim that other members of his work group were treated more favorably. See Matsushita, 475 U.S. at 586 (requiring the nonmoving party to point to "specific facts" to prove that there is a genuine issue of material fact). Even if we were to consider Plaintiff's deposition testimony, a document that he never submitted as evidence, Plaintiff cannot meet the fourth prong required to establish employment discrimination as he did not allege that he was actually treated differently. Furthermore, Plaintiff, when given the opportunity to offer a written statement during his investigation, alleged no discrimination whatsoever.

Further, the one instance in which Plaintiff does allege that he was treated differently does not constitute an adverse employment action. Plaintiff claims that DiMaggio denied his request to go to a training session attended by several team members. However, DiMaggio "insisted" that Plaintiff attend sixty other training sessions. Furthermore, even if DiMaggio treated Plaintiff less favorably by denying his attendance to this particular session, Plaintiff's prima facie case would still fail as he has not provided any evidence to demonstrate that his employment opportunities were negatively impacted by not attending this training, a necessary characteristic of an adverse employment action. See Carver v. Trenton, 420 F.3d 243, 250 (3d

Cir. 2005) (stating that "an adverse employment action involves some harm to an employee's employment opportunities").

Plaintiff also provides no evidence that gives rise to an inference of discrimination. Even though Plaintiff's work group was racially diverse, he admits that DiMaggio treated the team "well" and got along with everyone. In addition, Matthew Chia, who is also a member of Plaintiff's protected class, was the group's highest earner. Furthermore, Plaintiff's written statement during the investigation states that he felt "singled out," and that he and DiMaggio had "nothing in common." These allegations, however, give rise to an inference that DiMaggio might not have liked Plaintiff as an individual, not that DiMaggio dislikes Asian-Americans. Plaintiff also claims to have told Verizon Security that DiMaggio discriminated against him, but there is no evidence to support this claim. As Plaintiff has failed to show that similarly situated employees were treated more favorably than he, or to allege facts that give rise to an inference of discrimination, Plaintiff cannot make out a prima face case of employment discrimination.

**2. Verizon's Legitimate Reason for Termination**

Even if Plaintiff could make out a prima facie case of employment discrimination, Verizon has provided a legitimate reason for terminating Plaintiff's employment that Plaintiff has

not demonstrated is pretextual.  Verizon offered a legitimate reason when it claimed that Plaintiff was fired for violations of the Verizon Code of Business Conduct.  As noted above, a defendant's burden in providing a legitimate basis for its adverse action is easily met, and the violation of an official written policy certainly suffices.

To rebut Verizon's basis, Plaintiff would have to demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) (internal quotations omitted).  Instead, however, Plaintiff admits that he violated Verizon's Code of Business Conduct.  Furthermore, he merely repeats the allegation from his Complaint that Verizon did not investigate violations of his fellow team members.  However, Plaintiff does not provide any evidentiary support for this assertion by, for example, introducing any of the other employees' personnel files or any documentation of an investigation carried out by DiMaggio.  Additionally, Plaintiff did not even introduce a sworn affidavit that these other employees were not investigated.  Therefore, Plaintiff fails to demonstrate that Verizon's true motivation was discriminatory.

Thus, the Court grants summary judgment as to Plaintiff's employment discrimination claim because Plaintiff fails to make out a prima facie case of employment discrimination and because Verizon has presented a legitimate reason for Plaintiff's termination that Plaintiff has not shown is pretextual.

**B. Retaliation Claim**

Given that employment discrimination claims brought under 42 U.S.C. § 1981 are treated the same as Title VII claims, the Court will analyze Plaintiff's retaliation claim as if it was brought under Title VII. To make out a prima facie case of retaliatory discharge a plaintiff must show, "1) that [he] engaged in protected activity, 2) that the employer took adverse action against [him], and 3) that a causal link exists between the protected activity and the employer's adverse action." Kachmar v. Sungard Data Sys., 109 F.3d 173, 177 (3d Cir. 1997). For Title VII cases, "protected activity" includes formal complaints to employers and informal protests of discrimination, "including making complaints to management." Barber v. CSX Distrib. Serv., 68 F.3d 694, 702 (3d Cir. 1995).

Plaintiff fails to make out a prima facie case of retaliatory discharge as he did not engage in any protected activity. Plaintiff did not follow Verizon's procedures when he failed to make a formal complaint of discrimination, nor did he

protest to Verizon management.  Although filing this current action would count as a protected activity, any alleged retaliation occurred long before Plaintiff filed his Complaint.  Therefore, Plaintiff has failed to engage in any protected activity that could support a retaliation claim.

Even if Plaintiff's alleged protest to Verizon Security satisfied the first element of retaliatory discharge, his claim would still fail as he asserts no connection between that complaint and David Luft's decision to terminate his employment.  In fact, there is no indication that Luft knew about any possible discrimination.  As Plaintiff cannot make out two elements of retaliatory discrimination, he fails to set forth a prima facie case.  Therefore, the Court grants summary judgment in Verizon's favor as to Plaintiff's retaliation claim as well.

## Conclusion

Plaintiff has not established a prima facie case of employment discrimination as he has neither shown that similarly situated employees were treated more favorably nor has he demonstrated that Verizon's stated reason for firing him was pretextual.  Additionally, Plaintiff cannot make out a prima facie case of retaliatory discrimination as he did not engage in protected activity nor was there a connection between his potential protest to Verizon Security and his subsequent

termination.  Thus, the Court grants summary judgment in Defendant's favor as to Plaintiff's claims of employment discrimination and retaliation.